IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

IN RE:  JOHN WADE BELL and
ANN TATE BELL,

                        Debtor.

RBS, INC. and
UNITED BANK, INC.,

                        Appellants,

v.                                                                       CIVIL ACTION NO.   5:13-cv-27240

JOHN WADE BELL and
ANN TATE BELL,

                        Appellees.

**MEMORANDUM OPINION AND ORDER**

This is an appeal from a decision of the United States Bankruptcy Court for the Southern District of West Virginia denying Appellants, R.B.S. Inc. (RBS) and United Bank, Inc.'s (United) *Motion to Lift Stay* (Document 2-4).[1]  The Court disposes with oral argument because the facts and legal arguments are adequately presented in the briefs and in the record, and the decisional process would not be significantly aided by oral argument.[2]  See Fed R. Bankr. P. 8012.  For the reasons stated herein, the decision of the Bankruptcy Court is reversed.

---

[1] RBS joined United's motion to lift stay on January 31, 2013, when the Bankruptcy Court granted RBS's motion to intervene.  (*See* Document 2-9).

[2] The record before the Court on appeal consists of the following: (1) Amended Notice of Appeal; (2) Appellant Designation of Records and Statement of Issues To Be Presented on Appeal; (3) Appellees' Designation of Records; (4) Motion of United Bank to Lift Stay; (5) Response to Motion to Lift Stay; (6) Response to Motion to Lift Stay; (7) Motion to Intervene; (8) Memorandum in Opposition to Motion to Lift Stay and Order on Motion to Lift Stay; (9) Order granting Motion to Intervene ; (10) Reply by RBS, Inc. In Support of United Banks, Inc.'s Motion to

## I.    FACTUAL AND PROCEDURAL HISTORY

*A. Factual History*

The facts underlying this appeal are undisputed. The Debtor / Appellee, John Wade Bell, has been a builder in Greenbrier County, West Virginia, since at least 1973.[3] [4]  (Document 2-16 at 1.)   Mr. Bell's primary focus was in building custom cabinetry, and, to that end, he established a shop on the subject property, and made periodic additions specific to the nature of his business, such as a three-phase electrical service, custom wood-drying racks and intricate ventilation systems.  (*Id*. at 2.)

On or about July 11, 2006, the John Bell Company, Inc. (Bell Co.) executed a promissory note with United, whereby Bell Co. borrowed monies from United, and, in exchange, became obligated to re-pay roughly $324,600 pursuant to the terms of the note.  (Document 2-16 at 2.) For various reasons, on or about December 10, 2009, the Bell Co. and United agreed to refinance the July note, and the parties executed a second Promissory Note on that date.  (*Id*.)  Paramount to the instant dispute, on that same date, both John W. Bell and Ann T. Bell (together, the Debtors) executed a personal Guaranty, whereby each unconditionally assured payment of the note to United.  (*Id*.)  To effectuate their guaranties, the Debtors executed a Deed of Trust, in which they conveyed certain property to James B. Hayhurst, Trustee, for the benefit of United.[5]  (*Id*.)

---

Lift Stay; (11) Response to Reply; (12) Memorandum by United Bank in Support of Motion to Lift Stay; (13) Reply to Response; (14) Further Response to Reply; (15) Order Converting Case to Chapter 11; (16) Order Denying Motion to Lift Stay; (17) Response to Notice of Appeal; (18) Order Granting Motion to Amend Complaint; (19) Amended Complaint; (20) Main Docket Card; (21) AP Docket Card; and (22) an Index.  (*See* Docket 2.)
3       The Debtor / Appellee was a pioneer of green building techniques in the area, which involved collecting and preserving unique lumber to use for home construction builds.   Exhibit 16 at 1.)   He employed anywhere between five and fifteen local craftsmen at his business.  (*Id*. at 2.)
4       Appellee Ann Tate Bell is the wife of John Wade Bell.
5       The deeded property (Property) is described as "2.23 acres and 0.27 acres, less an outsale of 0.765 acres,

On or about December 19, 2011, the Debtors and United again agreed to refinance the note, and executed a Memorandum and Notice of Loan and Deed of Trust Modification, this time extending the maturity date to November 1, 2021. (Document 2-16 at 3.) The Bell Co. defaulted on its obligation to repay the Note, and United entered default per the terms of the Deed of Trust.[6] (*Id*.) United then appointed James W. Lane as successor trustee (Trustee) per the Deed of Trust, and he sent a notice of default and right to cure to the Debtors on October 16, 2012. (*Id*.)

A foreclosure sale was originally set for October 16, 2012, but due to a defect in the notice, a new notice was issued for November 2, 2012, at 10:30 A.M. (Document 2-16 at 3.) The terms of the sale specified, in relevant part, that "[t]he property will be sold for cash in hand on the date of sale to the highest bidder." (Document 2-8, Exhibit A at 3.) The Debtors allege that their counsel called the Trustee on November 1, 2012, to inform him that they would be filing a bankruptcy petition the next day, November 2, 2012. (Document 2-16 at 4.)

Nonetheless, the Trustee conducted a foreclosure sale at 10:30 A.M., on November 2, 2012. (Document 2-16 at 4.) Appellant RBS was the highest bidder at $255,000, which represented approximately $50,000 more than the payoff of the Note and costs of sale. (*Id*.) At approximately 10:50 A.M., and after the hammer dropped, the Trustee and RBS executed a Memorandum of Successor Trustee's Sale, whereby RBS delivered a $25,000 deposit, with the remainder due as soon as the Trustee delivered an acceptable deed together with a report of sale. (*Id*. at 5.)

---

Caldwell, Lewisburg District, Greenbrier County, West Virginia. (Document 2-16 at 1.) The Deed of Trust is recorded in the office of the Clerk of the County Commission of Greenbrier County, West Virginia, in Trust Deed Book 587, page 536. (*Id*. at 3.)

6    It is alleged that Mr. Bell suffered from severe health problems, including cancer, during this period, and the Debtors tried unsuccessfully to refinance the note a third time with United.

The Debtors completed their mandatory credit counseling at 12:06 P.M., on that same day. (Document 2-16 at 4.) Thereafter, at approximately 4:00 P.M., the Debtors filed a petition for relief under the Bankruptcy Code. As part of their bankruptcy petition, the Debtors listed in Schedule A two parcels of land, or the subject Property, as valued at $189,350, and indicated that they intended to retain said property. (*Id*. at 5.) Attendant to their bankruptcy petition, on that date an automatic stay began pursuant to 11 U.S.C. § 362.

B. Procedural History

On November 8, 2012 United filed a *Motion for Order for Relief from the Automatic Stay to Permit Trustee under Deed of Trust to Consummate Foreclosure Sale of Real Property Conducted Prior to the Bankruptcy Filing* (Document 2-4.) On November 21, 2012, the Debtors filed an *Answer to Motion for Order for Relief from Automatic Stay to Permit Trustee under Deed of Trust to Consummate Foreclosure Sale of Real Property Conducted Prior to the Bankruptcy Filing* (Document 2-5.) Thereafter, on December 5, 2012, a hearing was held in relation to the above filings, and on January 8, 2013, the Debtors filed an *Answer to Motion by United Bank to Lift Automatic Stay and Motion by Debtor to Pay United Bank in Full* (Document 2-6).[7]

On January 29, 2013, Appellant RBS filed a *Motion to Intervene and Joinder in United Bank, Inc.'s Motion for Relief from Stay* (Document 2-7). On that same day, the Debtors filed a *Memorandum of Law in Opposition to United Bank's Motion for Relief from the Automatic Stay and Permit Deed of Trust Trustee to Consummate Sale* (Document 2-8). On January 31, 2013, the Bankruptcy Court issued an *Order Granting R.B.S., Inc.'s Motion to Intervene* (Document 2-9), and thereafter, on February 6, 2013, Appellant RBS filed their *Reply in Support of United*

---

7       The Court notes that at the December hearing, the United States Bankruptcy Judge for the Southern District of West Virginia gave the parties additional time to file memoranda, resulting in another response from the debtors.

4

*Bank, Inc.'s Motion for Relief from Stay* (Document 2-10). The Debtors filed their *Response to the Argument of R.B.S., Inc.* (Document 2-11) on February 12, 2013, with RBS filing a *Reply to Response of Debtors to the Argument of R.B.S. Inc.* (Document 2-13) on March 8, 2013. United filed its *Memorandum in Support of United Bank, Inc.'s Motion for Relief from Stay* on February 13, 2013 (Document 2-12). The Debtors filed a *Further Response of the Debtors to the Argument of RBS, Inc.* (Document 2-14) on March 15, 2013. On August 8, 2013, the Bankruptcy Court issued an *Order Converting Case to a Chapter 11 Reorganization Case; Relieving Chapter 7 Trustee; Setting Meeting of Creditors; Setting Deadline to File Proofs of Claim; Directing Debtor(s) to File Required Pleadings; and Directing Debtor(s) to Pay Conversion Fee* (Document 2-15).

In the filings below, United (and RBS) argued that the Debtors did not have an ownership interest, legal or equitable, in the subject Property after it had been "hammered down" and sold at the foreclosure sale, and therefore, it should not be part of the estate subject to the automatic stay. (Document 2-4 at 4-5.) They cited *In re Bardell*, 374 B.R. 588 (N. D. W. Va. 2007) for support, and noted that it is factually analogous to the instant dispute. The Debtors responded that *Bardell* is inapplicable as it conflicts with the teachings of *Smith v. Mooney (In re Smith)*, 155 B.R. 145 (B.R. S. D. 1993), and further argued that the foreclosure sale was not complete when the Debtors filed their Bankruptcy Petition because the terms of the actual sale were different from those mandated by the applicable Notice. (Document 2-5 at 3-6.) The Debtors further argued that the *Bardell* case is not binding as the Fourth Circuit merely affirmed the district court via an unpublished opinion.

On August 23, 2013, the Bankruptcy Court issued an *Order Denying Stay Relief* (Document 2-16). In that order, the Bankruptcy Court denied the motion to lift the stay because "a foreclosure sale confers a contractual right under the terms and conditions of the foreclosure sale, but that the equitable title to the real property remains unchanged until the recordation of the deed." (*Id*. at 9.) The Bankruptcy Court disagreed with the *Bardell* "interpretation" of West Virginia law, and found that its denial of the motion to lift the stay, and supporting reasoning, "is more reflective of the language the West Virginia Supreme Court chose to use [in *Atkinson v. Washington and Jefferson College*, 54 W. Va. 32, 46 S.E. 253, 255 (1903)]." (*Id*.) Thus, because the Debtors had filed their Bankruptcy Petition before RBS and the Trustee recorded the deed, the Bankruptcy Court held that the equitable interest remained with the Debtors such that the Property should be included in the Bankruptcy estate's automatic stay.

On September 4, 2013, Appellant RBS filed a *Notice of Appeal*.[8] On September 5, 2013, the Debtors filed a *Response to R.B.S., Inc.'s Notice of Appeal* (Document 2-17). The Debtors / Plaintiffs also filed an *Amended Complaint* (Document 2-19) on October 2, 2013.[9]

Pursuant to this Court's November 4, 2013 *Order* (Document 3), Appellant RBS submitted its *Brief* (Document 5) on November 18, 2013. The Debtors / Appellees' *Brief* [10] (Document 6) was submitted on December 2, 2013, and Appellant RBS's *Reply Brief* (Document 7) was filed on December 19, 2013.

---

8    The Court notes that on September 5, 2013, the Appellant R.B.S. filed an *Amended Notice of Appeal* (Exhibit 1).
9    The Court notes that an *Adversary Proceeding* was initiated on June 5, 2013, by the Debtors / Plaintiffs with the filing of a single-count *Complaint* requesting a declaratory judgment.
10    The Debtors / Appellees attached the following as exhibits to their brief: (1) an undated, five-page copy of the docket sheet from adversary proceeding case no. 5:13-ap-05011; and (2) a copy of the amended complaint filed in adversary proceeding case no. 5:13-5011.

## II. STANDARD OF REVIEW

"On an appeal the district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. . ." Fed. R. Bankr. P. 8013. "In considering such appeals from bankruptcy court decisions, the district courts are thus required to review the bankruptcy court's findings of fact for clear error, its legal conclusions *de novo,* and its exercise of discretion for abuse thereof." *George Junior Republic in Pennsylvania v. Williams,* 2008 WL 763304, at *2 (E.D.Pa. Mar. 19, 2008) (citing *IRS v. Pransky,* 318 F.3d 536, 542 (3d Cir.2003); *Professional Insurance Management v. Ohio Casualty Group of Insurance Companies,* 285 F.3d 268, 282-283 (3d Cir.2002); *In re Krystal Cadillac Oldsmobile GMC Truck, Inc.,* 142 F.3d 631, 635 (3d Cir.1998)); *see also In re Modanlo,* 266 F.App'x 272, 274 (4th Cir.2008) (per curium) (unpublished decision) ("In a bankruptcy appeal, we review the bankruptcy court's decision directly, applying the same standard of review as did the district court . . . Under this standard, we review legal conclusions de novo and factual findings for clear error." (citations omitted)).

On appeal, the district court may only consider the evidence which was presented to the bankruptcy court and made part of the record. *See In re Computer Dynamics, Inc*. 253 B.R. 693, 697 (E.D.Va. Oct. 13, 2000) (citing *Com. Of Va., State Educ. Assistance Authority v. Dillon,* 189 B.R. 382, 384 (W.D.Va. Mar. 9, 1995)). Simply put, we review, as would the Fourth Circuit Court of Appeals, any questions of law, such as those at issue in this case, *de novo*. See *In re Royal*, 137 Fed.Appx. 537 (4th Cir. 2005).

### III. APPLICABLE LAW

"Section 362 of the Bankruptcy Code imposes a broad automatic stay which prohibits all entities from, among other things, engaging in any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the state." *In re Royal*, 137 Fed.Appx. 537, 539 (4th Cir. 2005) (internal citations omitted). 11 U.S.C. § 362(d) provides, in relevant part, that after a request and hearing, a court shall grant relief from the automatic stay:

> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if –
>
>> (A) the debtor does not have an equity in such property; and
>>
>> (B) such property is not necessary to an effective reorganization.

11 U.S.C. §§ 362(d)(1), 362 (d)(2)(a)-(b).

### IV. DISCUSSION

As an initial matter, the Court observes that the parties wish to present, and argue, certain issues that were not noted in the notice of appeal nor decided by the Bankruptcy Court in its August 2013 order.[11] The Court declines the opportunity to entertain any arguments not squarely on point to the ultimate issue. The lone issue before the Court is whether the Bankruptcy Court

---

11  For example, the Debtor / Appellees argue in their brief that they did assert below, both in the adversary proceeding and in the answer to the motion to lift the stay "that the Memorandum of Sale was never filed. The Memorandum of Sale that was attached to the pleadings and made a part of [the] record here on appeal is an unrecorded document." The Court finds that this issue is not before it on appeal, and also notes that the Bankruptcy Court in its order denying stay relief noted that the "[overall bankruptcy] litigation raises numerous issues as to the trustee sale and those issues must be resolved in the related adversary proceeding." (Document 2-16 at 10.)

erred by finding that the Debtors retained an interest in the Property after it had been "hammered down" and sold at a foreclosure sale, but before a deed could be recorded by RBS. Resolution of this question necessarily decides the ultimate query of whether the Bankruptcy Court erred when it denied the Appellee's motion to lift the automatic stay, relative to the Bankruptcy Petition filed after the foreclosure sale but before the recording of the deed.

The Court finds that the facts are not in dispute and, accordingly, the issue turns on a purely legal question. The Court notes that, at first glance, the legal issue seems to have split the United States District Courts for the Northern and Southern Districts of West Virginia, with the two sister districts – specifically their Bankruptcy Courts – reaching opposite conclusions upon application of the same state law.

*A. Argument on Appeal*

Appellant RBS asserts that the Bankruptcy Court erred by incorrectly interpreting West Virginia law to find that the Debtors retained an equitable interest in the subject Property sold at the pre-petition foreclosure sale. (Document 5 at 7-10.) RBS argues that the *Bardell* opinion extensively reviewed *Smith v. Mooney*, the case the Bankruptcy Court relied on to support denying the motion to lift the stay, and that the court in *Bardell* ultimately "respectfully disagree[d]" with the legal analysis in *Smith*, for the following reasons:

> In his discussion, Judge Friend [of *Smith*] cited *Atkinson v. Washington & Jefferson College*, 54 W.Va. 32, 40, 46 S.E. 253 (1903), for the proposition that the acceptance of the bid at the foreclosure sale and execution of a memorandum of sale does not confer title on the purchaser, but rather confers a right to call for the deed. While this is certainly true, the fact remains that after the bid is accepted and the memorandum executed, the debtor has no interest in the property. The equitable interest in the property lies with the purchaser at the sale. The legal titled rests in the hands of the trustee. While the purchaser only has a right 'to call for the deed,' it is the

9

> trustee to whom the call is to be made, and it is the trustee who will execute the deed. *See* West Virginia Code § 38-1-6.

(Document 5 at 11-12.) (quoting *Bardell*, 374 B.R. at 594.) Essentially, RBS argues that *Bardell*, while not binding, is persuasive and applicable, and that the Bankruptcy Court erred by failing to utilize it as support to lift the automatic stay.

The Debtors / Appellees respond that the Bankruptcy Court was correct in denying the motion to lift the automatic stay because West Virginia is a race-notice state, and failing to record the deed before the Debtors filed their bankruptcy petition rendered the foreclosure sale incomplete. (Document 6 at 6-7.) They argue that only the deed confers title, and because no deed was executed following the sale, the equitable interest remained with them. (*Id*. at 9.) On the question of *Bardell* and its applicability to the issue at hand, the Debtors argue that because the Bankruptcy Court "opined [that *Bardell*] was the product of either flawed or incomplete reasoning," it is not applicable here, and even if it were, it is not binding. (*Id*. at 12, 14-15.) The Debtors also argue that the terms of the sale did not match the terms of the foreclosure sale notice, and thus, the sale was "improper pursuant to the due process requirement under West Virginia law for a non-judicial foreclosure sale." (*Id*. at 13.) Finally, the Debtors argue that an adversary proceeding is necessary to determine the validity of an interest in property, and that, again, because of due process concerns, "a property interest cannot be divested without some kind of hearing, and the proper hearing in this instance is an adversary proceeding." (*Id*. at 15.) (citations omitted).

RBS replies that the issue is simply whether the Bankruptcy Court erred by relying on *Smith* rather than *Bardell*. It notes that the Debtors are attempting to complicate and muddy the waters on appeal, and that again, the only issue before the Court is the applicability of *Bardell*. (Document 7 at 1.) (*Id*. at 1-2.) The Appellant also avers that the terms of the foreclosure sale

10

were proper, that the Debtors indeed enjoyed due process protections, and that the Bankruptcy Court's denial of RBS and United's motion to lift the automatic stay was not based on any ground other than *Bardell* being inapplicable inasmuch as it misinterpreted West Virginia law. (*Id*. at 6-7.)

The Court finds that the Bankruptcy Court erred by failing to apply the ruling of *Bardell*, which disagreed with the *Smith* court's interpretation of West Virginia law, yet was affirmed by the Fourth Circuit Court of Appeals after briefing. The Court remands the case to the Bankruptcy Court for disposition pursuant to this Memorandum Opinion and Order.

*B. The Cases*

The United States District Court for the Northern District of West Virginia held in *Bardell v. Branch Banking & Trust Co*, a case factually analogous to this one, that, "under West Virginia law, the pre-petition foreclosure sale terminated [the] debtor's equitable interest in the property, even though the deed of trust was not delivered to the purchaser <u>until after</u> the filing of the bankruptcy petition."[12] *Bardell*, 374 B.R. at 588. (emphasis added.) *Bardell* also involved undisputed facts which revealed that a debtor's property was sold via foreclosure sale just two days before the debtor filed for Chapter 13 bankruptcy protection. *Id*. at 589. While the debtor's petition was filed before a deed from the foreclosure sale could be recorded, the court there held that the equitable interest passed to the purchaser at the foreclosure sale, and thus, the property was not part of the bankruptcy estate, subject to an automatic stay. In reaching its conclusion, the *Bardell* court "respectfully disagreed" with the holding of *Smith v. Mooney*, 155 B.R. 145 (Bankr. S. D. W. Va. 1993). *Bardell*, 374 B.R. at 594.

---

12   The District Court's opinion affirmed the Bankruptcy Court's determination that the debtor "was not entitled to cure his mortgage default or avoid the pre-petition foreclosure sale." *Bardell*, 374 B.R. at 590.

The *Bardell* court specifically challenged the *Smith* court's interpretation of *Atkinson v. Washington & Jefferson College*, 54 W. Va. 32, (1903), and reiterated that "after the [foreclosure sale] bid is accepted and the memorandum executed, <u>the debtor has no interest in the property</u>. The equitable interest in the property lies with the purchaser at the sale. The legal title rests in the hands of the trustee." *Id*. (emphasis added). The *Bardell* court also discussed a number of cases from the Fourth Circuit, mainly from Virginia, and noted that "these decisions are consistent with the law in Virginia."[13] *Id*. at 592. That court also examined cases from other circuits which supported its holding that "the foreclosure sale itself terminates the debtor's property rights." *Id*.

*Smith v. Mooney* involved a similar circumstance to that presented here, with the debtor's property, used as security for a loan, sold via foreclosure sale in January of 1992. 155 B.R. 145, 146 (Bankr. S. D. W. Va. 1993). In February of that year, the debtor filed for Chapter 11 bankruptcy, but it was not until March that the deed of trust was prepared and recorded. *Id*. There, the court noted that "[c]onsistent with the Court of Appeals of West Virginia, this Court finds that, as to the transfer of real property, such transfer cannot be complete absent delivery of the deed," and further, "[t]his Court's interpretation of the *Atkinson* decision is that until the deed of trust trustee delivers the deed, the debtor continues to maintain an equitable interest in the subject property." *Id*. at 148.

The West Virginia Supreme Court of Appeals has more recently considered the question of property ownership when a bankruptcy petition is filed after a foreclosure sale, but before the recording of a deed, in *Harper v. Smith*, 753 S.E.2d 612 (W. Va. 2012), a per curiam opinion. In pertinent part, *Harper* involved facts similar to those seen here. In 1997, the Harpers secured a

---

13  The *Bardell* court found that the law in Virginia is "particularly relevant in areas of property law, inasmuch as West Virginia adopted the common law of Virginia at its inception. <u>West Virginia Code § 2-1-1</u>." *Bardell*, 374 B.R. at 591, note 2.

12

loan, using property as collateral. *Harper*, 753 S.E.2d at 614. The Harpers were in default by 2001, however, and the property was subsequently sold at a foreclosure sale to the Bank of New York on July 10, 2001. *Id*. The Harpers filed for bankruptcy on July 19, 2001, but the trustee's deed – reflecting the foreclosure sale – was dated July 16, 2001. *Id*. at 615. Importantly, the deed was not recorded until October 1, 2001, well after the Harpers filed their bankruptcy. *Id*.

Thereafter, the purchaser at the foreclosure sale failed to remit property taxes from 2003 through 2006, and the Mingo County Sheriff sold the tax lien on the property, which was purchased by Marquis Development, LLC, which then sold the property to Mr. Smith, who served an eviction notice on the Harpers' son, Mike Harper, then living on the property. *Harper*, 753 S.E.2d at 614. In 2008, the Harpers filed a declaratory judgment action, claiming they were the owners of the property. *Id*. After submission of the respective motions for summary judgment, the circuit court ruled that there was no genuine issue of material fact, and granted summary judgment for the defendants and against the Harpers. The Harpers appealed, claiming, in addition to other arguments, that there was a question of fact with regard to whether the Bank of New York actually obtained title to the property via the foreclosure sale. *Id*.

The West Virginia Supreme Court, in holding that the Bank of New York did, in fact, obtain title to the property via the foreclosure sale, declared that:

> Contrary to Mr. Harper's contentions, there is clear evidence in the record showing that the Bank of New York purchased the property at the foreclosure sale on July 10, 2001, and obtained a valid title. In particular, the record includes various letters sent to the Harpers advising them that their loan was in default; the trustee's notice of sale; the report of the trustee indicating that the property was in fact sold at the front door of the Mingo County Courthouse on July 10, 2001 to the Bank of New York . . .; and the trustee's deed conveying the property to the purchaser, the Bank of New York. During her deposition, Lois Harper admitted that the foreclosure occurred

> <u>before</u> she and her husband filed for bankruptcy. She further testified that she did not tell her bankruptcy attorney about the foreclosure. Even Mr. Harper acknowledges that the sale occurred <u>prior</u> to his parents filing their bankruptcy application.

*Harper*, 753 S.E.2d at 615. (emphasis added). Later in the opinion, the West Virginia Supreme Court again reiterated that, "we affirm the circuit court order granting summary judgment in favor of Mr. Smith because the Harpers lost title to the property *as a result of the foreclosure sale in 2001 . . .*" *Id*. at 617. (emphasis added). Hence, the *Harper* decision demonstrates that *Smith* does not accurately reflect West Virginia law.

Also important to the Court's determination today, *Bardell* was appealed to the Fourth Circuit Court, which affirmed the decision after briefing, finding "no reversible error." *See Bardell v. Branch Banking & Trust Co.*, 294 Fed.Appx. 47 (CA.4 (W.Va.) 2008)). *Smith* was apparently never appealed to the District Court for the Southern District of West Virginia, and, therefore, not to the Fourth Circuit. This procedural and historical review is especially relevant when presented with such a divide between two cases examining the same legal issue with similar underlying facts. The review is likewise pertinent when viewed against the Bankruptcy Court's reasoning for not applying *Bardell,* which was that *Bardell* misinterpreted language contained in *Atkinson*.

The Court further notes the length and depth of the two competing opinions as support for the applicability and appropriateness of employing *Bardell* to the case at bar. *Bardell* delved into the applicable law in West Virginia, as well as other state and circuit interpretations, examined *Atkinson*, and further scrutinized and distinguished *Smith* as getting it wrong. *Smith*, on the other hand, interpreted *Atkinson* – and West Virginia law – as giving support for the conclusion that "as

14

to the transfer or real property, such transfer cannot be complete absent delivery of the deed."[14] *Smith*, 155 B.R. at 147.

Of paramount importance to the Court, *Bardell* actually critiqued *Smith* and disagreed with the interpretation it gave *Atkinson*, with the Fourth Circuit (implicitly) affirming the "alternative" conclusion reached by *Bardell*. Certainly, the Fourth Circuit would have found reversible error if a West Virginia District Court misapplied West Virginia law, particularly when the *Bardell* court disagreed with, and made such a sharp break with, *Smith*. The West Virginia Supreme Court, as the final arbiter of West Virginia law, applied the same interpretation in *Harper* as the District Court used in *Bardell*. Thus, applying the reasoning of *Bardell* and *Harper*, the Court finds that the Debtor's equitable interest in the subject Property was severed when the "hammer was struck down" at the foreclosure sale before the filing of Debtor's bankruptcy petition. That, coupled with the fact that the Trustee, as opposed to the Debtors, was vested with legal title, results in the conclusion that the subject Property should not have been included as part of the Debtors' bankruptcy estate, subject to the automatic stay.

## CONCLUSION

Accordingly, the Bankruptcy Court's August 23, 2013 *Order* (Document 2-16) is **REVERSED.** The Court **ORDERS** that this matter be **REMANDED** to the Bankruptcy Court for the Southern District of West Virginia for further findings and disposition consistent with this opinion.

---

14  The Court notes that the *Smith* court initially avoided the transfer of the debtor's property via an earlier foreclosure sale as violating Bankruptcy Code §§ 1107(a) and 549(a). .

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record, to any unrepresented party, and to the Bankruptcy Court Clerk.

ENTER: March 26, 2014

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA